**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

THOMAS E. PEREZ            )
*Secretary of Labor,*           )
 *United States Department of Labor*,   )
                        )
        Petitioner,       )
                        )
      v.               )      Case No. 15-mc-401-SAC
                        )
DAVID O. ALEGRIA,         )
                        )
        Respondent.     )

## REPORT AND RECOMMENDATION[1]

      This matter comes before the court upon the Secretary of the Department of Labor's Petition to Enforce a Subpoena (ECF No. 1) and upon Respondent David O. Alegria's Motion to Quash Subpoena (ECF No. 6). The Secretary of the Department of Labor (DOL) seeks a court order directing David O. Alegria to fully comply with an administrative subpoena *duces tecum* issued by the DOL's Regional Administrator of the Midwest Region, Wage and Hour Division. The subpoena calls for Mr. Alegria to testify and produce documents regarding the wages, hours, and other conditions and practices of employment maintained by two restaurants owned and operated by two limited liability companies (LLCs), of which Mr. Alegria is a member. For the reasons explained below, the magistrate judge recommends that the district judge grant the DOL's request to enforce the subpoena and deny Mr. Alegria's motion to quash/motion to dismiss. The DOL also seeks a court order tolling the statute of limitations. Because the DOL

---

[1] *See NLRB v. Midwest Heating and Air Conditioning*, No. 07-222-KHV, 2008 WL 4330022, at *3-*4 (D. Kan. Sept. 16, 2008) (concluding that the magistrate judge lacked the authority to issue a final decision disposing of an administrative subpoena enforcement proceeding initiated by the National Labor Relations Board); *see also NRLB v. Frazier*, 966 F.2d 812, 813 (3d Cir. 1992) (finding that an order on a motion to enforce a subpoena requiring a respondent to testify before an administrative law judge was a dispositive order); *United States v. Mueller*, 930 F.2d 10, 12 (1991) (finding that the magistrate judge should have issued a report and recommendation rather than a final order on a motion to enforce an Internal Revenue Service summons).

fails to provide any legal authority or factual support for its request, the magistrate judge recommends the district judge deny the request without prejudice.

I.      **Background**

In May 2014, the Wage and Hour Division opened an investigation of two locations of Cilantro's Mexican Bar & Grill to determine whether the restaurants had violated or were violating any provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, or any regulation promulgated under the FLSA. There are two Cilantro's Mexican Bar & Grill restaurants located in Omaha, Nebraska. Each restaurant is owned by a separate LLC. According to the DOL, each LLC is owned in equal thirds by the same three individuals, among them Mr. Alegria.

Prior to serving the subpoena at issue, the DOL attempted to obtain information regarding the compensation and working conditions at the Cilantro's facilities. The DOL states it sent three letters and also made a verbal request for the information. Mr. Alegria produced some information, but the DOL alleges that his response was incomplete. The DOL states that after Mr. Alegria failed to respond to a follow-up letter requesting this information, the DOL personally served him with a subpoena *duces tecum* on September 29, 2014. The subpoena requires him to appear on October 10, 2014, at the Wage and Hour office in Kansas City, Kansas to testify regarding the wages, hours, and other conditions and practices of employment maintained by the Cilantro's restaurants. The subpoena also seeks categories of documents related to: (1) the ownership of the two Cilantro's restaurants and all other businesses owned by the restaurants' owners, (2) the total dollar volume of sales of businesses and volume of goods purchased or received, and (3) employees' payroll, time, and other employment-related records. Mr. Alegria faxed a document titled, "Motion to Quash Subpoena," to the Wage and Hour

Division on October 9, 2014. He attached to the document two pages listing fifty-eight employee names, addresses, dates of birth, Social Security numbers, and hire dates. He failed to appear on October 10, 2014, or to produce any other documents sought by the subpoena.

The DOL filed its petition to enforce the administrative subpoena on February 13, 2015, and on February 18, 2015, the court issued an order directing Mr. Alegria to show cause why he should not be compelled to comply with the subpoena.[2] The order directs an investigator from the Wage and Hour Division to serve copies of the show cause order and the petition on Mr. Alegria within fourteen days. The order further directs that Mr. Alegria had twenty-one days from the date of service to respond to the DOL's petition. On April 7, 2015, Mr. Alegria responded to the petition and also moved to quash the subpoena and dismiss this proceeding.[3] Mr. Alegria argues his testimony is shielded from discovery by the attorney-client privilege. He argues he is not a proper party to this proceeding and that the DOL's petition fails to state a claim upon which relief may be granted. He argues that Nebraska law should apply to this matter, that he is not responsible for corporate actions, that he was not personally served with a copy of the petition, that venue is improper, and that the motion is moot because he has already provided information to the DOL.

## II.    Discussion

Administrative agencies' investigative powers are analogous to a grand jury in that an agency can investigate on a mere suspicion the law is being violated.[4] The FLSA, 29 U.S.C. §

---

[2] *See* Order to Show Cause at 1-2, ECF No. 2.

[3] *See* Resp't Mot. to Quash Subpoena, Mot. to Dismiss and Resp. to Show Cause Order, ECF Nos. 5-6.

[4] *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950); *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428-29 (9th Cir.1983), abrogated on other grounds by *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).

209, and the Federal Trade Commission Act, 15 U.S.C. § 49, 50, grant the DOL authority to subpoena the attendance and testimony of a witness, as well as to seek production of documents relevant to an ongoing investigation.

When seeking judicial enforcement of an administrative subpoena, the agency bears the initial burden of proof.[5]  To meet this burden, the agency must show: (1) the inquiry is within the agency's authority; (2) the information sought is reasonably relevant to the inquiry; (3) the demand is not too indefinite; and (4) the administrative prerequisites have been satisfied.[6]  Once the agency makes this showing, the court will enforce the subpoena unless the respondent can show: (1) "the subpoena is overly broad or burdensome"[7]; or (2) "that enforcement would constitute an abuse of the court's process."[8]  An abuse of process is established only upon a showing of bad faith.[9]  The court first addresses the DOL's showing and then addresses Mr. Alegria's arguments in opposition to subpoena enforcement.

### A.  The DOL's Initial Showing

#### 1.  Inquiry within agency's authority

Mr. Alegria does not contest that the DOL has carried its initial burden. As to the first factor, the inquiry is clearly within the agency's authority. The FLSA requires, among other things, that employers covered by the FLSA pay non-exempt employees a minimum wage for all

---

[5]  *See SEC v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 514 (10th Cir. 1980), *cert. denied*, *Drizin v. SEC*, 449 U.S. 955 (1980).

[6]  *Martin v. Gard*, 811 F. Supp. 616, 620 (D. Kan. 1993) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)); *see also Blackfoot Bituminous, Inc.*, 622 F.2d at 514.

[7]  *Martin*, 811 F. Supp. at 620 (citing *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 475–76 (4th Cir. 1986)).

[8]  *Id.* (citing *United States v. Wilson*, 864 F.2d 1219, 1222 (5th Cir. 1989)).

[9]  *Id.* (citing *United States v. Powell*, 379 U.S. 48, 58 (1964)).

hours worked and at a premium rate for all overtime hours worked.[10] The DOL is responsible for administering and enforcing the FLSA.[11] The FLSA authorizes the DOL to "investigate and gather data regarding the wages, hours, and other conditions and practices of employment" in industries subject to the FLSA.[12] It further authorizes the DOL to "enter and inspect such places and such records . . . , question such employees, and investigate such facts, conditions, practices, or matters as [it] may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter."[13] To aid in these investigations, the FLSA grants the DOL authority to subpoena witnesses and documentary evidence relating to matters under investigation.[14] The DOL explains that in accordance with the statutory authority, it began an investigation to ensure that Cilantro's was paying its employees the wages to which they are entitled.

### 2. Reasonable relevance & demand not too indefinite

The information sought in the subpoena also appears reasonably relevant to the DOL's inquiry and is not too indefinite. All of the categories of information are sufficiently specific to enable Mr. Alegria to understand what information the DOL seeks. The DOL explains that documents relating to the ownership of the two Cilantro's restaurants and all other businesses owned by the members of the LLC are relevant because individuals, such as owners, may be

---

[10] *See* 29 U.S.C. §§ 206-207.

[11] *See* 29 U.S.C. §§ 204, 211(a), 216(c), 217.

[12] 29 U.S.C. § 211(a).

[13] *Id.*

[14] 29 U.S.C. § 209 (stating that for the purpose of hearings or investigations, the DOL has the full range of enforcement powers possessed by the Federal Trade Commission under 15 U.S.C. §§ 49-50).

considered employers subject to the FLSA's requirements.[15] The DOL further states this information is relevant because other businesses owned by the Cilantro's owners may be subject to the FLSA and may have similar pay practices. Similar businesses owned by the restaurants' owners might also be joint employers, and thus, also responsible for any FLSA violations. The DOL also states this information is relevant to the issue of whether employees are shared among businesses with common ownership, which goes to the DOL's calculation of aggregate weekly hours and pay rates. The DOL seeks information about the total dollar amount of sales or businesses and the volume of goods purchased or received, which it states relates to whether the Cilantro's restaurants are an enterprise subject to FLSA coverage under 29 U.S.C. § 203(s)(1)(A). The remaining category of documents seeks information about employees, payroll time, and related records. The DOL explains that these records are directly relevant to FLSA compliance and will enable it to identify and contact employees for interviews.

### 3. Administrative prerequisites satisfied

Finally, the DOL has satisfied the administrative prerequisites in issuing the subpoena. These require that the subpoena: (1) is signed by the Director ; (2) is "served either in person by an authorized representative of the Department of Labor or by certified mail, return receipt requested;" and (3) does not require compliance less than seven days following service.[16] Here, the subpoena was signed by the District Director,[17] and Mark Carter, a DOL investigator, personally served Mr. Alegria with the subpoena.[18] The date of service noted on the subpoena,

---

[15] *See* 29 U.S.C. § 203(d).

[16] 29 C.F.R. 90.14(d) (2007).

[17] *See* Subpoena Duces Tecum at 3, ECF No. 1-2.

[18] *See* Aff. of Mark Carter at 1, ECF No. 1-2.

as well as in Mark Carter's sworn affidavit, is September 29, 2014.[19]  The subpoena requested

Mr. Alegria to comply on October 10, 2014, exceeding the seven-day minimum period for

compliance.[20] Therefore, the DOL has satisfied the required administrative steps.

### B.  Objections to Enforcement

Having found that the DOL has carried its initial burden, the court next turns to Mr.

Alegria's arguments in opposition to enforcement of the subpoena. For the reasons stated below,

Mr. Alegria's arguments are either unpersuasive or he has not carried his burden to show that

certain objections apply.

### 1.  Attorney-Client Privilege

Federal law governs the application of the attorney-client privilege in this context.[21] The

Tenth Circuit in *In re Grand Jury Proceedings*[22] defines the scope of the attorney-client privilege

as follows:

> The attorney-client privilege protects confidential communications
> by a client to an attorney made in order to obtain legal assistance
> from the attorney in his capacity as a legal advisor. The mere fact
> that an attorney was involved in a communication does not
> automatically render the communication subject to the attorney-
> client privilege; rather, the communication between a lawyer and
> client must relate to legal advice or strategy sought by the client.[23]

---

[19] *Id.* at 1, 4.

[20] *Id.* at 3.

[21] *See* Fed. R. Evid. 501.

[22] 616 F.3d 1172 (10th Cir. 2010).

[23] *Id.* at 1182 (internal quotations and citations omitted).

The privilege also protects attorney-to-client communications that "would have a tendency to reveal the confidences of the client."[24] Underlying facts, however, do not become privileged by relaying them to an attorney.[25]

"The burden of establishing the applicability of the attorney-client privilege rests on the party seeking to assert it."[26] "The party must bear the burden as to specific questions or documents, not by making a blanket claim."[27] The court must strictly construe the attorney-client privilege and permit it "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."[28]

Mr. Alegria is not only a member of the LCCs that own the Cilantro's locations. He contends that he is also acting as the attorney representing the employer that is the subject of the investigation. He contends that all communication in his possession constitutes attorney-client privileged information and the attorney-client privilege also precludes him from giving deposition testimony. Notably, Mr. Alegria does not describe the nature of any documents withheld on privilege grounds, and he has also failed to supply the court with a privilege log. In his reply brief, however, he clarifies that he is asserting the privilege as a bar to his deposition and suggests he is not asserting the privilege as a bar to the document discovery.[29]

---

[24] *Id.*(citing Kenneth S. Brown, *McCormick on Evidence* § 89 (6th ed. 2006); *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990)).

[25] *Id.*

[26] *Id.* at 1183 (quoting *In re Grand Jury Subpoena*, 697 F.2d 277, 279 (10th Cir. 1983)).

[27] *Id.* (quoting *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).

[28] *Id.* (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)).

[29] *See* Resp.'t Reply in Further Supp. of Mot. to Quash Subpoena and Mot. to Dismiss at 7-8, ECF No. 8.

The court rejects Mr. Alegria's blanket privilege objection as a basis for prohibiting his deposition or document discovery. In general, "[a]ttorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source for discovery by virtue of their license to practice law or their employment by a party to represent them in litigation."[30] Although the Federal Rules of Civil Procedure exempt privileged material from discovery, the "Rules…do not themselves exempt attorneys from being a source of discoverable facts."[31] This district has allowed the depositions of counsel of record in pending cases when the deposition relates to the attorney's role as a fact witness rather than the attorney's role in representing a client.[32] This appears to be the case here. The DOL does not seek to depose Mr. Alegria regarding the legal advice he has provided to his clients.

This information is particularly important given Mr. Alegria's role as a member of the LLCs that operate the restaurants. Given his dual role, it seems reasonably likely that he would possess discoverable information or documents obtained or created in the context of being a member of the LLCs rather than serving as counsel for the businesses. For these reasons, the magistrate judge recommends the district judge overrule Mr. Alegria's blanket attorney-client privilege objection as a bar to the deposition. To the extent Mr. Alegria is asserting an attorney-client privilege objection as a bar to document discovery, the magistrate judge recommends the district judge overrule this objection as well.

## 2.   Failure to State a Claim/Improper Party

---

[30] *United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 248 (D. Kan. 1995).

[31] *Id.* at 247.

[32] *See Fugett v. Sec. Transp. Servs., Inc.*, No. 14-2291-JAR, 2015 WL 419716, at *4 (D. Kan. Feb. 2, 2015) (allowing for the deposition of counsel of record as a fact witness); *Kannaday v. Ball*, No 12-2742-RDR, 2013 WL 3820013 (D. Kan. July 24, 2013) (same).

Mr. Alegria also contends that under Fed. R. Civ. P. 12(b)(6), the DOL's petition for subpoena enforcement fails to state a claim upon which relief may be granted. He contends that the real parties in interest are the Nebraska LLCs that own the Cilantro's restaurants and that they should be the entities from which the DOL should seek documents.

This position reflects a misunderstanding of the nature of this proceeding and the DOL's subpoena power. The DOL has not asserted any substantive claim against Mr. Alegria. Moreover, for the reasons set forth when discussing the DOL's initial burden, it has the authority to conduct wage-and-hour investigations, such as this one, and to subpoena relevant information. Additionally, the DOL states Mr. Alegria informed it that he is the sole point of contact for information pertaining to the investigation. Mr. Alegria does not cite, and the court is not aware, of any authority that would limit the DOL's ability to seek information from him as one of the members of the LLCs that own the restaurants subject to the investigation, particularly in light of Mr. Alegria informing the DOL that it should contact him for all information pertaining to the investigation. For these reasons, the magistrate judge recommends the district judge deny Mr. Alegria's request to dismiss this proceeding.

### 3.  Improper Service

Mr. Alegria also contends that the court's prior order required the DOL to personally serve him with a copy of the court's show cause order, the DOL's petition, and all supporting documents. Mr. Alegria argues that the DOL did not comply with this order because it merely sent the copies to his office rather than personally serving him. The plain language of the order, however, simply does not require personal service. Instead, the court ordered that, "within fourteen (14) days . . . , an Investigator from the Wage and Hour Division, U.S. Department of

Labor, shall serve copies of this Order to Show Cause and a copy of the Petition and supporting documents on Respondent Mr. Alegria, and Petitioner shall file proof of service thereafter."[33]

Fed. R. Civ. P. 4(e) governs service of a summons and a complaint upon an individual within a judicial district of the United States. Rule 4(e)(1) provides for service by methods prescribed by state law. K.S.A. 60-303 lists methods for service of process within the State of Kansas and provides that service may be made by "return receipt delivery," which is defined to include "overnight delivery service . . . to the party addressed, in each instance evidenced by a written or electronic receipt showing to whom delivered, the date of delivery, the address where delivered and the person or entity effecting delivery."[34] Here, the DOL served Mr. Alegria via overnight delivery mail with proof of delivery. It appears service was proper. The magistrate judge recommends the district judge reject Mr. Alegria's argument that the court should dismiss the DOL's petition for enforcement because the DOL did not personally serve him.

### 4.  Improper Venue

Mr. Alegria also contends that venue in the District of Kansas is improper because the employers at issue reside in Nebraska and the acts that give rise to the DOL's investigation occurred in Nebraska. He cites an opinion from this district for its proposition that "the general venue provision, 28 U.S.C. § 1391, governs venue for FLSA claims."[35] Among other things, the general venue statute provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

---

[33] Order to Show Cause at 2, ECF No. 2.

[34] K.S.A. 60-303(c).

[35] *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 682, (D. Kan. 2004) (citing cases).

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[36]

The case Mr. Alegria cites involved substantive FLSA claims rather than a proceeding seeking enforcement of a subpoena issued in conjunction with an administrative investigation. This is a subpoena enforcement action involving a respondent who resides in Kansas and involving events taking place in Kansas—specifically, service of the subpoena in Kansas and compliance with the subpoena to have taken place in Kansas. Moreover, as the DOL notes, it has the full range of enforcement powers possessed by the FTC.[37] When a respondent fails to comply with a subpoena, the DOL "may invoke the aid of any court of the United States in requiring" compliance.[38] Other federal courts interpreting this statutory language have concluded that in enforcement actions, this statute governs over the general venue statute.[39] Under either statute, however, venue is proper in the District of Kansas. The magistrate judge recommends the district judge reject Mr. Alegria's argument that venue is not proper in this district.

## 5. Mootness

Finally, Mr. Alegria argues that the DOL's petition is moot because "the employer has responded to its inquiry" by providing various categories of information.[40] Mr. Alegria goes on

---

[36] 28 U.S.C. § 1391(b).

[37] *See* 29 U.S.C. § 209.

[38] 15 U.S.C. § 49.

[39] *See FTC v. Cockrell*, 431 F. Supp. 558, 560 (D.C.D.C. 1977); *FTC v. Browning*, 435 F.2d 96, 98 (D.C. Cir. 1970).

[40] Resp.'t Mot. to Quash Subpoena, Mot. to Dismiss and Resp. to Show Cause Order at 10, ECF Nos. 5 and 6.

to list certain documents provided to the DOL and notes that the employers have made employees available for interviews. Nevertheless, the DOL details the documents sought by the subpoena that Mr. Alegria has not produced—among them documents showing hours worked for each workday and total hours worked each workweek for each employee in 2012, 2013, and 2014. The DOL states that Mr. Alegria has only provided a biweekly pay period of payroll records. Moreover, the matter is clearly not "moot" because Mr. Alegria did not appear for the records deposition, as the subpoena required. The magistrate judge recommends the district judge reject this argument as well.

### C.  Tolling

The DOL also requests that the court enter an order tolling the running of the applicable statute of limitations from October 10, 2014, the date of subpoena compliance, until such time as the DOL notifies the court that Mr. Alegria has complied with the subpoena. Typically, active deception is "a pre-requisite to tolling the statute of limitations, with certain factors to consider."[41] When the moving party has failed to allege active deception, this court has denied requests to toll the statute of limitations.[42] Here, the DOL has not alleged active deception. The DOL has also failed to cite any legal authority or allege any facts from which the court could evaluate its request that the court toll the statute of limitations. Because the DOL has not supported its request to toll the statute of limitations, the magistrate judge recommends the district judge deny the request without prejudice.

### D.  Conclusion

---

[41] *Allen v. Mill-Tel, Inc.*, No. 11-1143-EFM, 2012 WL 2872160, at *8 (D. Kan. July 12, 2012) (citing *Smith v. BNSF Ry. Co.*, 246 F.R.D. 652, 654-55 (D. Kan. 2007)).

[42] *Id.* (citing *Smith*, 246 F.R.D. at 654-55).

For the foregoing reasons, the magistrate judge recommends that the district judge grant the DOL's petition to enforce the subpoena as to its request for subpoena enforcement and deny without prejudice the petition as to the DOL's request to toll the statute of limitations. The magistrate judge also recommends the district judge deny Mr. Alegria's motion to quash and dismiss.

Pursuant to 28 U.S.C.§636(b)(1), Fed. R. Civ. P. 72, and D. Kan. Rule 72.1.4, the parties shall have fourteen (14) days after service of a copy of this Report and Recommendations to file any written objections. A party must file any objections within the fourteen-day period if that party wants to have appellate review of the proposed findings of fact, conclusions of law, or recommended disposition. If no objections are timely filed, no appellate review will be allowed by any court.

Dated this 24th day of June, 2015, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge